IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF:

**ONE BLACK IPHONE IN A RED CASE, BEARING IMEI: 35 683811 264184 3**

Magistrate No. 21-1429

**[UNDER SEAL]**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Jonathan K. DuThinh, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state that:

### INTRODUCTION AND AGENT BACKGROUND

1. This Affidavit is made in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for the issuance of a search warrant authorizing the search of a cellular telephone, described below and in Section I of Attachment A, for electronically stored information described in Section II of Attachment A.

2. I have been employed as Special Agent (SA) with the ATF for approximately five (5) years. I am currently assigned to the ATF Pittsburgh Field Office, Group II. As part of my duties, I am authorized to conduct investigations of persons who engage in unlawful firearms possession, acquisition and use as well as violent crimes including commercial robberies. I have been personally involved in dozens of firearms investigations, and as such I am familiar with the various methods used by prohibited persons to acquire firearms. I have experience with a wide range of investigative techniques, including various types of visual and electronic surveillance, the interception of wire communications, and the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, controlled deliveries, use of search and arrest warrants, management and use of

informants, pen registers, the laundering and concealing of proceeds from drug trafficking, and the street gangs who participate in these illegal activities. As such, I am familiar with the way in which individuals involved in illegal drug trafficking and/or unlawful firearms possession use cellular telephones, in addition to the evidence that can be obtained from cellular telephones of individuals involved in that illegal activity.

3. The information contained herein is based upon my own personal investigation, observations, and knowledge as well as upon the investigation, personal observations, and knowledge of other law enforcement officers with whom I have discussed this case. Because this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a search warrant, I have not included every item of evidence or piece of information known to me; rather, I have included only those facts necessary to establish probable cause.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. This Application and Affidavit are being submitted in support of a search warrant for the following device, which is currently secured within the ATF-Pittsburgh II vault at 1000 Liberty Avenue, Pittsburgh, PA 15222:

    a. One Black APPLE IPHONE cellular "smart phone" with red case, bearing IMEI: 35 683811 264184 3, recovered from the person of Brandon MCCASKILL by City of Duquesne Police Department (DPD) Officer (Ofc) Ryan Johnston on or about July 5, 2021 (hereinafter **TARGET TELEPHONE**).

    b. Investigators, including your Affiant, believe the records and other information contained within **TARGET TELEPHONE** contain evidence of violations of Title 21, United States Code, Sections 841 and 846, which make it unlawful for individuals to possess with intent to distribute and distribute controlled substances

or conspire to do the same, and Title 18, United States Code, Sections 922 and 924, which make it unlawful for certain individuals to possess firearms and prohibits the possession of firearms during and in relation to crimes of violence and in furtherance of drug trafficking activity (hereinafter the **TARGET OFFENSES**).

5. The applied-for warrant would authorize the forensic search of **TARGET TELEPHONE** for the purpose of identifying electronically stored data particularly described in Section II of Attachment A.

## FACTS RELATING TO PROBABLE CAUSE

6. On August 17, 2020, members of the Duquesne Police Department (DPD), with the support of ATF Special Agents, executed a search warrant authorized by Magistrate Judge Miller of the Borough White Oak for the premises of 112 North Fourth Street, Duquesne, PA 15110. This residence is the home of Brandon McCASKILL (hereinafter "McCASKILL").

7. For officer and public safety, and because law enforcement officers had credible information that MCCASKILL had access to firearms, MCCASKILL was detained by DPD from the front porch of 112 North Fourth Street before the search was initiated. Subsequent to detaining MCCASKILL, a black in color Apple iPhone in a blue case and a red in color Apple iPhone in a black otterbox case were recovered from MCCASKILL's person.

8. During the search of 112 North Fourth Street, Law Enforcement Officers (LEOs) found, among other things, the following items: a Beretta 9mm semi-automatic pistol; two jars and baggies containing suspected marijuana; an additional cellular telephone; suspected heroin/fentanyl packaged in "bricks";[1] several baggies containing suspected cocaine; and a baggie containing pills. These items were found within a backpack that was located between the feet of

---

[1] A "brick" contains approximately one hundred stamp bags and is packaged as such for ease of distribution. A "brick" containing a mixture of heroin and fentanyl contains approximately one gram net weight.

McCaskill as he was sitting on the porch. A further search of the porch area yielded several more packaged bricks of suspected heroin/fentanyl, several more baggies containing suspected cocaine, corner baggie of pills, baggies of marijuana, several digital scales, and a large sum of US currency.

9. On or about July 1, 2021, Ofc Johnston and DPD Ofc Edwards were on foot patrol in the area of Truman Towers (25 N. 2nd St, Duquesne, PA 15110), a known and proven high narcotics area with open narcotics sales. Ofc Johnston and Ofc Edwards observed two males exit Truman Towers on foot wearing masks. Both males wore clothing with long sleeves, one of whom wore a hooded sweatshirt over the top of his head that covered part of his face. At the time of these observations, the temperature was approximately 72 degrees and humid. Ofc Johnston called for the males' attention and asked if they lived in Truman Towers. The males responded they did not. Ofc Johnston then asked for their identification. Officers identified one of the males as McCASKILL and the male wearing the hooded sweatshirt as Guy WALLAR Jr. (hereinafter "WALLAR"). Ofc Johnston then asked for consent to search McCASKILL and WALLAR for weapons, and they both consented. McCASKILL was searched with negative results. The search of WALLAR yielded a knotted plastic baggie containing suspected cocaine, two cellular telephones, and approximately $882 in US currency. WALLAR was arrested and charged in Allegheny County with Possession with the Intent to Deliver, a felony.

10. Unbeknownst to the officers during the above interaction, McCASKILL had an active federal arrest warrant for a three-count indictment at Criminal No. 21-204. Following WALLAR's arrest, federal authorities provided DPD with the federal arrest warrant for McCASKILL.

11. On July 5, 2021, DPD Ofc Johnston observed McCASKILL in the vicinity of 23 North Fourth St, Duquesne, PA 15110. Having previously identified McCASKILL with

WALLER on July 1, 2021, DPD Ofc Johnston effected the arrest of McCASKILL. During a search incident to arrest, Ofc Johnston recovered **TARGET TELEPHONE** on McCASKILL's person. McCASKILL was then transported to DPD.

12. Once at DPD, Ofc Johnston asked McCASKILL if he wanted any phone numbers from **TARGET TELEPHONE,** and McCASKILL answered in the affirmative. DPD Ofc Johnston then retrieved **TARGET TELEPHONE** and brought it to McCASKILL. While doing so, Ofc Johnston observed, in plan view, several text messages displayed as "notifications" on the home screen of **TARGET TELEPHONE**. The texts indicated that the individual was a drug customer who was unable to obtain narcotics from others and/or that the individual believed other sources of supply did not possess potent narcotics. After observing the text messages, DPD Ofc Johnston provided McCASKILL with the telephone numbers for two of his requested contacts. Based upon training and experience, your Affiant believes that a drug customer contacted McCASKILL in order to purchase narcotics. Moreover, evidence of drug trafficking will be contained on **TARGET TELEPHONE**.

13. Your Affiant is aware, through both training as well as experience gained through multiple narcotics investigations, that drug traffickers utilize cellular telephones to communicate with drug customers, fellow co-conspirators, and sources of supply. Your Affiant is also aware these targets also utilize multiple cellular telephones at one time in an effort to thwart detection by law enforcement and to compartmentalize their drug trafficking customers to one phone, their co-conspirators to another phone, and their drug source of supply to yet another phone.

14. Based upon my training and experience, I am aware that it is generally a common practice for drug traffickers to store the names and phone numbers of drug customers and photographs and videos detailing illegal activities in cellular telephones. Because drug traffickers

in many instances will "front" (that is, sell on consignment) controlled substances to their clients, and/or will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier(s) and the trafficker's dealer(s).  Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

15. Members of Drug Trafficking Organizations (DTO) often take group photographs with other enterprise members posing with paraphernalia, money and/or drugs.  Many cellular telephones, including **TARGET TELEPHONE** have a camera feature that is readily capable of capturing and storing these group photos.  In my experience, the phones of individuals who illegally possess firearms often contain evidence of unlawful firearm possession in the form of text messages, e-mails, and social media posts.  It has also been my experience that such phones often contain information regarding how an unlawful possessor acquired his firearm.

16. Members of DTOs often store each other's phone numbers and contact information in the directories of their cellular phones.

17. Based on my experience and familiarity with cellular telephones, I am aware that the telephones have voicemail and telephone directory features, as well as camera features which allow the user to take photographs and store them in the cellular phone's memory card. Based on my experience and training, statements by other law enforcement officers, and personal observations, I know that because of the storage capacity of cellular telephones, the portability of cellular telephones, the ease with which information stored on a cellular telephone may be accessed

and/or organized, and the need for frequent communication in arranging narcotics transactions, cellular telephones are frequently used by individuals involved in drug trafficking. In particular, I and other law enforcement officers have found that information frequently maintained on cellular telephones includes the contact numbers of other co-conspirators, contact numbers for narcotics customers and stored photographs of DTO activities. This evidence will come in the form of caller identification information, call log information, telephone numbers, address information, or other identification information, as well as opened and unopened voicemail and/or text messages, photographs, videos and information about access to the Internet.

18.     Members of DTOs routinely use multiple physical phones in succession as one breaks or the DTO feels that the number associated with the phone is compromised by law enforcement. The physical phone may no longer be an active communicative device, however many times these old phones are not discarded as they possess value to the DTO. The replaced device contains within it the contact information for drug customers of the DTO, and many times these phones are maintained as digital phone books should the new active phone become unusable or unavailable. Furthermore, these replaced phones are commonly kept in a relatively accessible location where either all or select members of the DTO can access the information within should it become necessary. As stated above, members of DTOs routinely take photographs and or memorialize other information of evidentiary value within these replaced phones. As such, it is common to recover a multitude of otherwise inactive phones especially at locations central to or important to the drug trafficker. Additionally, your affiant knows that persons who are legally prohibited from the purchase and possession of firearms acquire firearms through unlawful means. In order to do so, the solicitation and transaction thereof is often conducted via digital media devices and the conversations, pictures and specifics of the transaction are often stored within

cellular devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. As described above and in Section II of Attachment A, this Application seeks permission to search **TARGET TELEPHONE**, for records evidence of violations of the **TARGET OFFENSES**.

20. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.

21. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

22. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

23. Wholly apart from user-generated files, electronic device storage media—in particular, electronic devices' internal hard drives—contain electronic evidence of how an electronic device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Electronic device users typically do not erase or delete this evidence,

because special software is typically required for that task. However, it is technically possible to delete this information.

24. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

26. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution*.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28.     Based upon the foregoing, you Affiant submits that there is probable cause to believe **TARGET TELEPHONE** contains information related to the **TARGET OFFENSES** which law enforcement has probable cause to believe have been committed by Brandon McCaskill, and others both known and unknown.

>                                     */s/ Jonathan DuThinh*
>                                     Jonathan DuThinh,
>                                     Special Agent
>                                     Bureau of Alcohol, Tobacco,
>                                     Firearms and Explosives

Subscribed and sworn before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 9th day of July, 2021.

_____
HONORABLE PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**I.   Device to be Searched**

One Black APPLE IPHONE cellular "smart phone" with a red case, bearing IMEI: 35 683811 264184 3, which is currently secured within the ATF-Pittsburgh II vault and hereinafter referred to as **TARGET TELEPHONE**.

**II.   Records and Other Information to Be Seized**

1. All records, information, and items evidencing violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. §§ 922 and 924 on the **TARGET TELEPHONE**, including:

   a. incoming and outgoing call and text message logs,
   b. contact lists,
   c. photo and video galleries,
   d. sent and received text messages,
   e. online searches and sites viewed via the internet,
   f. online or electronic communications sent and received, including email, chat, and instant messages,
   g. sent and received audio files,
   h. navigation, mapping, and GPS files,
   i. telephone settings, including speed dial numbers and the telephone number for the **TARGET TELEPHONE** and related identifying information such as the ESN for the **TARGET TELEPHONE**,
   j. call forwarding information,
   k. messages drafted but not sent, and
   l. voice messages.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during service.

12

      3.      In searching **TARGET TELEPHONE**, federal agents may examine all of the data contained in the **TARGET TELPEHONE** to view its precise contents and determine whether the **TARGET TELEPHONE** and/or data falls within the items to be seized as set forth above. In addition, they may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth above.